UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MICHIGAN DEPARTMENT OF
TRANSPORTATION,

        Plaintiff,                       Case No. 10-12234

v.                                   Honorable Patrick J. Duggan

DETROIT INTERNATIONAL BRIDGE
COMPANY and SAFECO INSURANCE
COMPANY OF AMERICA,

        Defendants.

_____/

## OPINION AND ORDER

At a session of said Court, held in the U.S.
District Courthouse, Eastern District
of Michigan, on August 17, 2010.

PRESENT:        THE HONORABLE PATRICK J. DUGGAN
                        U.S. DISTRICT COURT JUDGE

On June 7, 2010, the Detroit International Bridge Company ("DIBC") removed this

action from the Wayne County Circuit Court alleging federal question jurisdiction.[1] On June

11, 2010, the Michigan Department of Transportation ("MDOT") filed a motion for remand.

That motion has been fully briefed and the Court heard oral argument on August 10, 2010.

## I. Factual and Procedural Background

On June 24, 2009, the MDOT filed this action in the Wayne County Circuit Court

_____

[1]Safeco Insurance Company of America ("Safeco") filed a joinder/concurrence in
removal on June 9, 2010.

alleging various breach of contract claims against the DIBC and Safeco. (*See* Not. of Removal Ex. A.) In its Complaint, the MDOT seeks specific performance of a contract entered into between itself and the DIBC in April 2004 for the construction of a direct connection between Michigan's interstate freeways and the Ambassador Bridge, a bridge connecting the United States and Canada that is privately owned by the DIBC. (*Id.*) Safeco issued a performance bond in the amount of $34,664,650 covering the project as set forth in an agreed design. (*Id.*)

On October 29, 2009, and November 13, 2009, the MDOT filed motions for partial summary disposition in the Wayne County Circuit Court seeking specific performance of certain portions of the contract between the parties. (MDOT's Mot. Exs. 1, 3.) The DIBC responded to those motions on January 8, 2010, and the court held a hearing on January 15, 2010. (*Id.* Exs. 2, 4; *see* Not. of Removal Ex. B at 2.) On February 1, 2010, the court issued an opinion and order granting the MDOT's motions and the MDOT's requests for specific performance. (Not. of Removal Ex. B.) The court specifically ordered that "DIBC submit to the Court and MDOT a detailed timetable for completing construction of Part (A) including removing conflicting structures and dates for commencing and completing the roads specified in the Agreements and Performance Bond within 21 days of this Order." (*Id.* at 15.)

On February 12, 2010, the DIBC filed a motion for a stay of the court's order. (MDOT's Mot. Ex. 5.) The Wayne County Circuit Court denied the motion one week later and the DIBC filed an emergency application for leave to appeal, a motion for a stay, and a motion for immediate consideration with the Michigan Court of Appeals the same day. (*See*

Not. of Removal Ex. F; MDOT's Mot. Exs. 6-7.)  On March 17, 2010, the Michigan Court of Appeals granted the motion for immediate consideration but denied the stay and application for leave to appeal, noting that the DIBC failed to persuade the court of the need for immediate appellate review.  (MDOT's Mot. Ex. 8.)

On April 27, 2010, the Wayne County Circuit Court issued an Order to Show Cause requiring that the DIBC show cause why it should not be held in civil contempt for failure to comply with the February 1, 2010, opinion and order, why construction of the DIBC's portion of the project cannot be completed within one year, and why the court should not require Safeco to step in and complete the construction.  (Not. of Removal Ex. C.)  Also on April 27, 2010, the DIBC filed an emergency application for leave to appeal, a motion for a stay, and a motion for immediate consideration with the Michigan Supreme Court. (MDOT's Mot. Ex. 10.)  On May 3, 2010, the DIBC filed a supplement to its emergency application arguing that the circuit court's order to show cause reformed the parties' underlying contract in a manner that unconstitutionally interferes with interstate and international commerce.  (*Id.* Ex. 11 at 5.)

On May 5, 2010, the Michigan Supreme Court granted the DIBC's motion for immediate consideration and for a stay of the proceedings in circuit court pending review of the emergency application for leave to appeal.  (Not. of Removal Ex. D.)  On May 28, 2010, however, the Michigan Supreme Court concluded that the application failed to present questions that should be reviewed by that court and dissolved the stay.  (*Id.* Ex. E.)  As previously noted, the DIBC then filed its Notice of Removal to this Court on June 7, 2010.

The MDOT now seeks remand on several different grounds.[2]

## II. Timeliness of Removal

First the MDOT argues that the DIBC's notice of removal is untimely. The relevant removal statute provides:

> The notice of removal of a civil action or proceeding shall be filed within thirty days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based . . . .
> If the case stated by the initial pleading is not removable, a notice of removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable . . . .

28 U.S.C. § 1446(b). There is no question that the DIBC filed its notice of removal more than thirty days after receipt of the initial pleading. As described above, the MDOT filed this action in the Wayne County Circuit Court on June 24, 2009, and the parties extensively litigated the matter in Michigan's state courts until the DIBC's notice of removal almost a year later on June 7, 2010.

The DIBC argues, however, that this case did not contain a federal question until the Wayne County Circuit Court, by way of the April 27, 2010, show cause order, *sua sponte* reformed the parties' contract and the MDOT's Complaint in a manner that violates, among

---

[2]While the MDOT's motion for remand was being briefed, several other motions, including a motion for leave to file an *amicus curiae* brief, were filed in this litigation. On July 22, 2010, this Court entered an opinion and order denying leave to file the *amicus curiae* brief and resolving the other motions. Then on August 5, 2010, Superior Global Inc. and Churchill Transportation Inc. filed motions for leave to file *amicus curiae* briefs. Yet another motion for leave was filed by Rush Trucking Company on August 11, 2010, the day after the Court held oral argument in this matter. For the reasons explained in the July 22, 2010, opinion and order, all motions for leave to file *amicus curiae* briefs with respect to the motion to remand are denied.

other things, the Supremacy and Commerce Clauses of the United States Constitution. As such, the DIBC asserts that this action did not become removable until either the Wayne County Circuit Court issued the show cause order on April 27, 2010, or the Michigan Supreme Court denied leave to appeal and dissolved the stay of the show cause order on May 28, 2010.[3] The Court disagrees.

Assuming for purposes of the timeliness analysis only that the Wayne County Circuit Court's show cause order created a federal question, the DIBC's notice of removal remains untimely. The Wayne County Circuit Court issued the show cause order on April 27, 2010. Assuming the validity of the DIBC's argument, the DIBC was placed on notice of the existence of federal question jurisdiction at that time. The DIBC then had the option of removing the case to federal court or continuing to litigate the matter in the state court system. The DIBC chose to litigate the matter in the state court system by pursuing relief in the Michigan Supreme Court.[4] Only when the state courts failed to provide the desired relief did the DIBC remove the case to this Court seeking, in essence, a second bite at the apple.[5]

---

[3]A case becomes removable once it involves a matter over which this Court has original jurisdiction. *See* 28 U.S.C. § 1441(a) ("Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.").

[4]The DIBC's counsel acknowledged at the August 10, 2010, hearing that this was the DIBC's chosen strategy.

[5]This, of course, creates yet another problem with the removal in this case: "[T]he right to remove is waived by acts which indicate an intent to proceed in state court, and . . . Defendants may not 'experiment' in state court and remove upon receiving an adverse decision." *Moore v. Permanente Med. Group, Inc.*, 981 F.2d 443 (9th Cir. 1992).

By the time of removal, however, more than thirty days had elapsed since the Wayne County Circuit Court's order, rendering the June 7, 2010, notice of removal untimely.

The DIBC nonetheless argues that the time for removal was tolled during the pendency of the stay issued by the Michigan Supreme Court on May 5, 2010. The DIBC claims that the stay amounts to an "exceptional circumstance" and that it was unable to file a notice of removal while the stay remained in effect. These arguments fail for a number of reasons.

First, the Michigan Supreme Court's stay restricted further proceedings in the Wayne County Circuit Court only; the order makes no mention of nor places any restriction on the DIBC's rights to remove the litigation to federal court. (Not. of Removal Ex. D.) Second, the DIBC fails to cite any Sixth Circuit precedent permitting tolling based on exceptional circumstances. (*See* DIBC Resp. at 5-7.) Third, even if tolling is available for exceptional circumstances, the DIBC's decision to pursue a stay order from the Michigan Supreme Court fails to qualify as an "exceptional" circumstance. In cases where exceptional circumstances tolling has applied, it has typically been in situations where the untimeliness of the notice of removal resulted from circumstances beyond the defendant's control. *See Vogel v. U.S. Office Prods. Co.*, 56 F. Supp. 2d 859, 865-66 (W.D. Mich. 1999) *rev'd on other grounds,* 258 F.3d 509 (6th Cir. 2001). Additionally, "the removal statute should be strictly construed and all doubts resolved in favor of remand." *Eastman v. Marine Mechanical Corp.*, 438 F.3d 544, 550 (6th Cir. 2006) (quotation omitted). In this case, where the DIBC had an opportunity to remove upon issuance of the show cause order but instead procured the

allegedly exceptional circumstance by filing a stay request in the Michigan Supreme Court,[6] the Court concludes that tolling of the thirty-day removal period would be inappropriate and that the DIBC's notice of removal is untimely. See *Groesbeck Investments, Inc. v. Smith*, 224 F. Supp. 2d 1144, 1148 (E.D. Mich. 2002) ("A defendant's failure to comply with the thirty-day limitation set forth in Section 1446(b) is an absolute bar to removal regardless of whether the removal would have been proper if timely filed.").

## III. Federal Question Jurisdiction

Even if the DIBC timely filed its notice of removal, the MDOT makes a second argument that there is no federal question involved in this litigation and, therefore, that this Court lacks subject-matter jurisdiction. As previously indicated, the DIBC maintains that the Wayne County Circuit Court introduced a federal question into this litigation when it *sua sponte* reformed the parties' contract and the MDOT's Complaint by issuing the show cause order on April 27, 2010. The DIBC's reformation allegation derives from language in the show cause order requiring that the DIBC "show cause why construction of [its] portion of the Gateway Project cannot be completed within one (1) year." (Not. of Removal Ex. C.) The DIBC asserts that a one-year limitation on performance reforms the parties' contract in a manner that will require unconstitutional interference with commerce and a federal "sterile

---

[6]The DIBC's counsel conceded at the August 10, 2010, hearing that the case could have been removed between the date of the show cause order by the Wayne County Circuit Court on April 27, 2010, and the issuance of the stay by the Michigan Supreme Court on May 5, 2010. As previously noted, however, the DIBC decided to take its chances with the Michigan Supreme Court.

zone,"[7] creating a federal question for consideration by this Court. The DIBC's argument lacks merit.

As an initial matter, the Court observes that the Wayne County Circuit Court's show cause order has not, in fact, imposed a one-year limitation on the DIBC's performance. The order merely requires that the DIBC show cause why performance cannot be completed within one year. This necessarily presents the DIBC with the opportunity to argue in the Wayne County Circuit Court that a one-year limitation would result in unlawful interference with commerce and the federal "sterile zone." And that opportunity, in turn, feeds directly into the second problem with the DIBC's argument: it relies on the existence of a federal question in defense of a state law claim to create federal question jurisdiction. Federal question jurisdiction, however, must arise from the face of a plaintiff's well-pleaded complaint; "a *defendant* cannot, merely by injecting a federal question into an action that asserts what is plainly a state-law claim, transform the action into one arising under federal law, thereby selecting the forum in which the claim shall be litigated." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 399, 107 S. Ct. 2425, 2433 (1987).

The DIBC attempts to avoid the latter problem by arguing that the federal question placed in issue by the show cause order falls within the substantial federal question exception to the well-pleaded complaint doctrine. *See Grable & Sons Metal Prods, Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 125 S. Ct. 2363 (2005); *Mikulski v. Centerior Energy Corp.*, 501 F.3d

---

[7]The parties dispute the import of any federally designate "sterile zone." The DIBC describes breach of the sterile zone as a national security issue while the MDOT maintains that the sterile zone merely governs the flow of goods sold at a duty-free store. The Court need not resolve this issue for purposes of this motion.

555, 560 (6th Cir. 2007). This exception restricts the ability of plaintiffs to "avoid removal jurisdiction by artfully casting their essentially federal law claims as state-law claims" in that it allows removal "where the vindication of a right under state law necessarily turn[s] on some construction of federal law." *Mikulski*, 501 F.3d at 560 (quotations omitted); *see also Grable*, 545 U.S. 308, 312, 125 S. Ct. at 2367 ("[A] federal court ought to be able to hear claims recognized under state law that nonetheless turn on substantial questions of federal law . . . ."). The exception is irrelevant in this case, however, where there is no indication that the MDOT "carefully structured [its] complaint to avoid federal jurisdiction." *Mikulski*, 501 at 561. From the start of this litigation, the MDOT sought specific performance of an agreement that required the DIBC's performance by July 2010. (*See* Not. of Removal Ex. A ¶ 31.) If performance on such a timeline presents a federal question as the DIBC argues, the federal question has been evident since the filing of the MDOT's Complaint on June 24, 2009.

Perhaps more important than the foregoing analysis, however, is the fact that, even with the Wayne County Circuit Court's show cause order, this matter fails to present an issue giving rise to federal question jurisdiction. Application of the substantial federal question exception "remains exceptional and federal courts must determine its availability, issue by issue." *Mikulski*, 501 F.3d at 565. In making this determination, the Court must keep in mind that "original federal jurisdiction is unavailable unless it appears that some substantial, disputed question of federal law is a necessary element of one of the well-pleaded state claims, or that [a] claim is 'really' one of federal law." *Franchise Tax Bd. v. Construction Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 13, 103 S. Ct. 2841, 2848 (1983); *see also*

*Grable*, 545 U.S. at 314, 125 S. Ct. at 2368 ("[T]he question is, does a state-law claim necessarily raise a *stated* federal issue, actually disputed and substantial . . . ." (emphasis added)). Ultimately, the MDOT presents nothing more than a state law breach of contract claim. The DIBC's argument that enforcement of the underlying contract interferes with federal commerce interests fails to create a federal question over which this Court has jurisdiction. *See Mikulski*, 501 F.3d at 565 ("The mere presence of a federal issue in a state law cause of action does not automatically confer federal question jurisdiction, either originally or on removal."). Therefore, this matter must be remanded to the Wayne County Circuit Court for lack of jurisdiction.

## IV. The *Rooker-Feldman* and *Younger* Abstention Doctrines

The MDOT argues in the third and fourth instance that this matter should be remanded pursuant to the *Rooker-Feldman* and *Younger* Abstention doctrines. *See Kovacic v. Cuyahoga County Dep't of Children & Family Servs.*, 606 F.3d 301, 308-10 (6th Cir. 2010) (explaining the *Rooker-Feldman* doctrine); *Fieger v. Cox*, 524 F.3d 770, 774-76 (6th Cir. 2008) (explaining the *Younger* Abstention doctrine). The DIBC disagrees as to both grounds. In light of the foregoing analysis, however, the Court need not address these issues.

## VI. Payment of Just Costs and Any Actual Expenses, Including Attorney Fees

Where a case has been improperly removed, 28 U.S.C. § 1447(c) provides, "An order remanding the case may require payment of just costs and any actual expenses, including attorney fees, incurred as a result of the removal." Such an award is generally appropriate "'where the removing party lacked an objectively reasonable basis for seeking removal.'" *Warthman v. Genoa Township Bd. of Trustees*, 549 F.3d 1055, 1059 (6th Cir. 2008) (*quoting*

*Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141, 126 S. Ct. 704, 711 (2005)). In light of the well-established law supporting the Court's foregoing analysis, the Court concludes that it was objectively unreasonable for the DIBC to remove this case after nearly a year of litigation in the Michigan state courts. Furthermore, an award of just costs and actual expenses, including attorney fees, would serve § 1447(c)'s purpose of "'reduc[ing] the attractiveness of removal as a method for delaying litigation and imposing costs on the plaintiff.'" *Id.* at 1060 (*quoting Martin*, 546 U.S. at 140, 126 S. Ct. at 711).

In its motion for remand, the MDOT requested an award of $9,600 in attorney fees and costs. The DIBC did not respond to the request. The Court concludes that $9,600 is reasonable and appropriate in this case. Therefore, the MDOT's request for $9,600 is granted.

Accordingly,

**IT IS ORDERED** that the motions for leave to file *amicus curiae* briefs by Superior Global Inc., Churchill Transportation Inc., and Rush Trucking Company are **DENIED**.

**IT IS FURTHER ORDERED** that the MDOT's motion to remand is **GRANTED**.

**IT IS FURTHER ORDERED** that the MDOT's request for $9,600 in costs and expenses, including attorney fees, is **GRANTED**.

s/PATRICK J. DUGGAN
UNITED STATES DISTRICT JUDGE

Copies to:
LuAnn C. Frost, Esq.
Robert L. Mol, Esq.
Craig L. John, Esq.
Michael A. Nedelman, Esq.
Patrick C. Lannen, Esq.

Jeffrey C. Gerish, Esq.
Phillip G. Alber, Esq.
Stephen F. Wasinger, Esq.
Kevin J. Plagens, Esq.
Martin J. Leavitt, Esq.
Aaron D. Wisely, Esq.